May it please the court. My name is Dan Goldberg and I represent Mr. Dudko in this appeal. Our contention in this appeal is that evidence was insufficient to convict Mr. Dudko of the child pornography offense in count three of the indictment. The government's evidence at trial on count three consisted of two photos, exhibits 10 and 11, and a trial stipulation. I think it's important at the outset here to acknowledge that the Eighth Circuit has repeatedly held that not all naked photos were pornographic because mere nudity does not qualify and a lascivious exhibition must be sexual in nature. Now it's my understanding that my counterpart, Mr. Davids, has brought you all a copy of exhibits 10 and 11 this morning and when you look at those photographs you see a child in a bathtub smiling and bathing and I think that's problematic on this record because the district court in finding Mr. Dudko guilty concluded, quote, it was minor children nude in a bathtub, end quote, but never explained why it was pornographic, didn't use the DOS factors, didn't expand and here it would be strange to have... So we're in the stipulation very quickly because the stipulation says they are pornography. Correct. Yes, you're right. Okay, so doesn't that settle the issue? I don't think so. I think typically I would say that stipulations do settle issues but not always. There's always exceptions to the rule here and I think for two reasons... What makes this exceptional? I'm sorry, Your Honor? What makes this circumstance exceptional? Two things. First, the stipulation itself doesn't have sufficient evidence. Here you have a stipulation and it doesn't engage the DOS factors or the statutory language. So for example, in the Kelly case the government relies on, he stipulates that it fits the definition of the statute. We don't have that here. The Paris case, another case the government relies on extremely heavily, the photographs were unnecessary where the defendant, quote, admitted that he instructed his nephew to raise his shirt and pull down his pants... Judge Counsel, the last paragraph talks about a witness if called to testify. This is stipulated to so she doesn't come to court. You know what's going on here. Would report, touched her, you know what he touched. Would testify he used his device to record capture while engaged in sexually explicit conduct. Judge, I think... So if that doesn't qualify... What page are you on because I think... Page four of the stipulation. It's the last paragraph based upon these stipulated facts. See, I think some of the uncertainty here is that there's counts one and two as well. Yeah, but it's evidence, counsel. Go ahead. Right, but that, so Jane Doe 1? Yeah, Jane Doe 1. It disavowed the stipulation. If you go to page five of the stipulation, it says none of the visual depictions that support count three are included in support of counts one and two of the indictment. So the thought was this victim in count three is not Jane Doe 1. So Jane Doe 1 doesn't get them there. Okay, you're going to have to explain that because that's not what I understood by what was charged. Well, there's a second stipulation. Right? Yes, Your Honor. And the second stipulation says CFA Costello located files and those files are exhibits ten and eleven, count three, and it says two images of files depicting child pornography are displayed. And so child pornography, doesn't that admit? And so now for you to get around that stipulation, it's got to fall into an exception because we stipulated is it child pornography? And to be child pornography, you know what the statute says, right? And now you're here contesting that they don't fit the statute, but you stipulated that they fit the statute. So unless it was magical that you needed to say that it actually is child pornography under this specific section, right? I think that's your point is a good one. And that's my contention. And that is your contention. All right. So the mere description that it's child pornography leaves us in the same place where you would be, I think, that if the defendant had actually pled guilty, and now we look to the images to see whether there's a sufficient factual basis to sustain that plea of guilty. And your argument essentially is here that these photographs, whatever they show, are insufficient to sustain a plea of guilty on this count. Yes, Your Honor. Let's say you're right on that. And let's get to the second question, is the sentencing packaging doctrine, why would it go back when it was clear that the judge felt that the punishment with the two consecutive sentences was such that this is more or less a throwaway charge? I don't know if he said that expressly. And I'm not, and here if we prevail, the guidelines go back down by 20 years. That is about as drastic of a drop you can have in guidelines. And here that's important because the judge went down by 30 years. And so I think this judge was, you know, he was tethered by the guidelines. Yeah, well, the guidelines were already at a place that was just kind of unbelievable, man. You know, he was at a level 52 or something. Right. I mean, and there is nothing above 43. And so he's enough levels above to get to criminal history category 4 anyhow with just the overriding, right? And so I guess what I'm asking, I mean, it seems to me if you strike this, you'd still end up in a situation where the guideline range is still going to be life or 30 years because that's the maximum penalty. Yeah, I mean, his guidelines would go down by 20 years. So I think that's significant. I also think it's significant the judge does acknowledge that my client was sentenced to what is, in effect, potentially a life sentence. And so the cost of having a resentencing hearing on the Sentencing Package Doctrine warrants that here when you're going down 20 years. And, you know, I think it's certainly plausible that he'd get sentenced to less time based on that. And I acknowledge that Counts 1 and 2, again, we stipulate on appeal that he was properly convicted of that. That doesn't mean he was guilty of Count 3. And we just don't know what impact that would have to have this conviction vacated. I think going back to the stipulation, I think the other thing that's troubling about it beyond, and I just want to touch a little bit more, let's say the trial stipulation said that he had, instead of Exhibits 10 and 11, he had the classic novel Lolita, a classic piece of literature. And that's the government's contention is that that's child pornography. And Mr. Duke stipulated to that and said, okay, I think this court still has a duty to think about is that licitious? And it seemed like the government doesn't understand its burden of proof at trial. And how do we know that? This is what they said at trial that Exhibits 10 and 11 consisted of. Quote, Exhibit 10 is an image depicting a nude three-year-old female in the bathtub. And Exhibit 11 is an image depicting a nude three-year-old female in the bathtub with a nude adult female, end quote. How is that licitious? How does that satisfy their burden beyond a reasonable doubt? It's evidence, right? It's evidence and evidence you can talk about. Sure, but I don't think it gets them there under DOS. I'm sure the government used the correct terms that were describing the offense, though, counsel, right? Well, that's it. I mean, in the stipulation, there's no saying this is licitious. Okay? That's a problem, I think. When they don't engage what the statute requires, it leaves us guessing. And when the judge doesn't engage that, I don't know what the record is there to support that. Especially when, and this is the second point on the stipulation, is that Mr. Duco has never told the importance of them. I thought the judge discussed it with him directly. Not on the record that this would, and let me look at the Stalder case that the government relies on. Wait, I need to get the facts right. I thought the judge discussed directly with the defendant and defense counsel there the stipulations and the effect they had. Not sufficiently, and I want to explain to you why. You keep dodging my question, counsel. It's a simple question. Did the judge discuss the stipulations with the defense counsel and defendant being there and talk about their legal effect? No, not their legal effect because it didn't tell them. Okay, well I hope you're not still dodging it, but go ahead. I want to address it. The legal effect is that what the government's maintaining is that that was sufficient to find him guilty behind a reasonable doubt, right? He wasn't told that. He wasn't told that. And so it's in contrast to the Stalder case where, quote, the important question is whether the defendant knew what he was doing when he entered in the stipulation, really wanted to agree to it, and understood that no trial at all would take place. Full stop on that. No trial at all would take place. Now, my client wasn't told that because there was a trial immediately after the stipulation being entered in the evidence. So what is Mr. Duco going to think? He's sitting there. He's waiting for his trial. He assumes he's presumed innocent, right? He's assumed that the government's going to have to admit exhibits they do. He's assuming that the district court's going to have to find him guilty beyond a reasonable doubt. And he's assuming this court is going to review whether there's sufficient evidence. And he's retaining all these rights because, you know what? He wasn't told to the contrary. So I want to be very direct with you. I mean, I'm not trying to evade the court's questions, but I just don't think the record supports the notion that he was told, like in these other cases that the government relies on, that he knew that all his rights were going out the window. Well, it was a weird case because, you know, the judge did, in fact, ask if the defense wanted to present any evidence. The defense, of course, because it was a trial, and the evidence said we have no evidence to present beyond the stipulation. The government said the same thing, so all of a sudden it's a case being tried on stipulated facts. And the court inquired whether or not Mr. Duco wanted to testify, and they said no. We had problems with the translation because the translator couldn't hear and whatever, but there's that conversation where the defendant does admit that he knows he has a right to testify and he's not going to testify. So he has to understand at that point that he's giving up some rights, okay? And you're left really with this whole thing, and it really, to me, it just keeps coming back to the same issue. I mean, you've got a stipulation that says it's child pornography, which seems to stipulate away the guilt, right? Because the definition of child pornography under 2256 is it has an identifiable minor who's been photographed engaging in sexually explicit conduct, and then sexually explicit conduct has a definition. Now you're telling us that the photos don't actually show that. You know, it might be a great ineffective assistance to counsel claim, but, you know, and at this point, I didn't have access to the photos, so I haven't actually seen them, so I don't know what they actually show, but we do know that mere nudity is not enough, right? And it seems that a lawyer who's going to stipulate to this would have to understand that when you say it's child pornography that what they're stipulating to, right? Or am I missing something? Well, I don't think we should assume that because I would encourage the court to look at the photographs because it's a child, the child's happy in the bathtub. I think there's all the time these types of photographs get taken by parents for whatever reason because it's fun to be in the bathtub. And, you know, there's cases that the Schuster case, Seventh Circuit case, standing alone in the bathtub is not commonly associated with sexual activity, end quote. So, yeah, it seems that just a kid sitting in the bathtub naked splashing around with a rubber ducky is, whatever that is, it's not child pornography, right? And one picture seems to be described as really nothing more than a naked child in a tub. The second picture with the adult female may or may not be something going on there. I mean, and it's just hard to tell from the description. And what the judge had before him was the description of the photo. Did he have the photo? Did he review the photo? I don't remember. The record's unclear to me. I think there is, he talks about the description of the photograph. I'm a little concerned the judge didn't look at the photographs. Were they introduced into evidence, counsel? Yes, Your Honor. This is a bench trial. We don't, on appeal, say district judges don't look at exhibits in trials. So you know that. They don't look at, I'm sorry, Your Honor. We assume on appeal that district judges look at exhibits submitted into evidence. We don't assume they didn't look at them. I mean, I don't know. Surely you understand that. You're a veteran attorney and a veteran advocate. I just don't know that assumption, Your Honor. I'll have to defer to you. What I would like to see is in the findings and conclusions as to why it satisfies the DOS factors. The previous case that we had an argument on, you were talking about the government's good job saying, well, this is what the judge did and hammered down and really nailed it down. I'm just not seeing that on this record. I'd like to reserve the remainder of my time, if I can, for rebuttal, though. All right. You can. Mr. Davids? May it please the Court, my name is Justin Davids. I'm an assistant U.S. attorney and I represent the appellee, the United States of America. Good morning. Okay. I want to start off by clarifying a few points that were made when speaking to the appellant and then I'm just going to sort of go over an overview of how we got here and then we'll explain why we think the stipulations are sufficient and the images are lascivious. So first of all, the claims that Jane Doe is not included in Count 3 is inaccurate. So we have Count 1, which is Jane Doe, just Jane Doe. We have Count 2. Count 1 is Jane Doe 1. Count 2 is Jane Doe 2. Count 3 doesn't mention any individual in particular. If we go to the stipulation on page 3, it says there were date stamps present on some of the images between November 20, 2021 and September 17, 2022. Most of the visual depictions of child pornography of Jane Doe 1 and Jane Doe 2 were taken at the defendant's residence in Greene County, Missouri. The child pornography images and videos created of Jane Doe 1 and Jane Doe 2 were produced using the defendant's phone. These files are the visual depictions supporting Counts 1 and 2 of the indictment. And then it says however, right? And so it says however there were some files that contained child pornography of Jane Doe 1 that had been produced outside of the state of Missouri as well as videos and images depicting other minors that was received by the defendant on a cellular phone. These specific files are the visual depictions supporting Count 3 of the indictment. So the stipulation indicates that there are images of Jane Doe 1 that cover both Count 1 and Count 3. Then it gives the examples include minor children with their mouth on an adult breast and minor children nude in a bathtub. So the stipulation actually covers for Count 3 covers actually three different categories of files. One, the files involving Jane Doe 1 that had been produced outside of the state of Missouri. Two, files of minor children with their mouth on an adult breast and three, files of minor children nude in a bathtub. Alright, so to the extent that there are Exhibits 10 and 11, those are in the third category. Those are examples of files that fall into the third category. So the court, even without considering Exhibits 10 and 11, the court could have found the stipulation sufficient to convict the defendant on Count 3 just based on the other two categories. Right? So it's just not accurate. It's just that Exhibits 10 and 11 are the only images supporting Count 3. Also the stipulation does track the statutory language. If we go to page 5, it says that based on the stipulated facts the defendant received visual depictions, that is video or images of minors less than 15 years of age engaged in sexually explicit conduct. That's the language of the statute. Sexually explicit conduct includes lascivious. It's not just lascivious. It includes other conduct that satisfies the statute. Counsel, what's the effect of the district court not going over with the defendant the legal consequences of the stipulation? Well, I don't think that the court has to go over the legal consequences. Stadler does talk about... Well, what's the authority that we should look to to determine that? Well, I think both Stadler and Lawrie, or I forget how you pronounce it, but those go to hold that the court doesn't have to go through the equivalent of a Rule 11 colloquy with a defendant when it comes to stipulations. Would you tell... I need to know the basic facts here. How much of a discussion did the judge have with the defendant and the counsel right there? Extensive, Judge. So it's on page 4, starting on page 4 of the trial transcript. It says the court acknowledges there had been a stipulation discussed among the parties. Has that stipulation been finally agreed to? Mind you, the stipulation had been filed pre-trial on ECF. And the AUSA says, yes, that stipulation has been signed and agreed to. And then the court addresses the defense attorney and goes, Mr. Risely, on behalf of the defendant, and he says, yes, your honor, that is correct. And then the court goes, just so our record is complete, was that translation of the stipulated, was a translation of the stipulation provided to your client in his native tongue? Risely says, yes, your honor, the interpreter present prepared a translation that Mr. Dudko reviewed. And then we went over him in two separate video calls to make sure he understood before signing. And the court goes, all right. And then Mr. Risely says, I also have a certificate of translation of stipulation of facts signed by the interpreter to present to the court. So the defense attorney got a certified translation to present to the defendant. And then the court goes, okay, is there any issue concerning the accuracy of either the stipulation or the translation of the stipulation that was provided to the defendant? And Mr. Risely says, no, your honor, not to my knowledge. We made sure he reviewed it and went over each paragraph with him so he understood it. That's a pretty thorough discussion. And we also know that the defendant understood the consequences of this. Because in his opening statement, he announces to the court, we stipulate to the evidence in this case, or you'll hear stipulated evidence. We'll explain the reason for that at a later time. He makes essentially the same statement in closing. When the defendant is being questioned about whether he wishes to testify, the defendant goes, I'm guilty. The judge is like, okay, but we're talking about testimony. But the defendant himself didn't express any concerns about him being found not guilty at the trial. Tell me if I'm getting my cases confused. Does the judge allude to the fact that then the defendants don't have to testify? Yes. He tells him he doesn't have to testify. He has a right not to testify. And he also tells me he has the right to testify. And so you have to tell me, do you want to testify or not? That's after the defense lawyer has already said, we have no case to present. And he says, yes, I don't want to testify. So that's his response. Was any explanation ever really offered any place in the record? Because I just really sort of maybe missed it as to what this great explanation was going to be that this stipulation wasn't fatal. That this stipulation wasn't fatal? Wasn't fatal to their defense, right? Because he doesn't tell the judge, we have a defense and now that everybody's got their closing argument in or got all the evidence in, here's my closing argument. We're going to flesh it out later in a trial memo, right, or something. He just says, it will be explained at a later date. And they do explain at a later date. He explains in the sentencing memo and it's sentencing. He says the whole purpose of this was to not make his daughter and other victims testify. Testify again. Yeah. But no defense was ever offered to the stipulation and the stipulated facts. And so I guess I didn't take that as an explanation as to what was done, although it is an explanation as to why you might make that choice. I thought there was some defense that somebody intended to offer. No, no, that was the explanation. That is the whole explanation. That's the explanation. That's the only one I saw. It's also to get, by stipulating, and he makes this argument at sentencing, is to demonstrate that he essentially should get some acceptance and responsibility. He didn't get it in the guidelines, but he's basically falling on his sword saying, look, there were these reasons that he didn't want to plead straight up guilty, but he didn't want to make his daughters go through this trial and have to testify, and that he's remorseful. And the court gives him credit for that. Right? And so that's the explanation for why they didn't want to do it. It's not in the record. A lot of this explanation is not in the record because, frankly, it was never an issue. Right? If the defense had brought up any of these issues with Exhibits 10 and 11 at trial, then we could have a record. Now, but they didn't because they always intended to take advantage of the stipulation at sentencing. But now they want to take advantage of a lack of record on this. But here are some of the facts is that the defense initially tried to obtain an Alford plea with the district court, but the district court wouldn't take an Alford plea. Counsel, is that in the record? No, it's not in the record because this wasn't an issue. Right? Like we were presuming about district judges, I'm worried when we start going outside the record to negotiations about an Alford plea, it's not in the record at all? It's not in the record at all. We can supplement the record with the email chain. That's up to you. You know about 28 J letters, of course.  That's up to you how you proceed. I think that it's important to talk about some things here that are outside the record because there's a reason why they're outside the record. That's because it was the intent of the defendant to enter into the stipulation and admit his guilt so that he could avoid putting his daughters through this experience and that he could then also obtain some leniency from the district court. Did he speak, I know it's a different language, did he speak at sentencing? He did. Did he say that at sentencing himself about, I didn't want to put my daughters through this? Or was that his counsel saying that? It was a pretty rambling statement. Well, yeah, but rambling can include mention of your daughters. Yeah, I do think he alluded to it. Well, we'll look at the record. We'll look at the transcript. Your time's short. Go ahead. Sure. You know, there was a lot of essentially how he had found religion in this process and the brain injury. Yeah, I think there was a lot of like either, there was some sense that one of the reasons he didn't plead guilty is that God had forgiven him. And so it's hard to sort of parse that. Proceed with the stuff. It'll speak for itself. Go ahead. So, Your Honor, I think that, you know, what we have here is that all that's required is that this stipulation be entered into, you know, unknowingly. And I think that the record reflects that. I don't think the court has to go so far as to say, and you know, like, I'll use this to find you guilty, right? Because to some extent that's fairly obvious. But to the other extent is the record demonstrates that the defense knew that was the event. Had trial been set for a long time for that date? I've been assuming that. Is that true? Your Honor, I don't exactly know. I assume so because... Well, the record would show. Usually it says, you know, district court records. Go ahead. I mean, it wasn't a surprise that trial was that date. Proceed. I mean, the stipulation had been on file for a while pre-trial. Proceed. As far as the images themselves are lascivious, you'll get to look at them. I do think that context matters here. Defense in their reply makes some contention with how the government described those photos. It says they're evidence. Everybody here has looked at a cell phone before. I don't think the judge needs expert testimony to tell him that this is a screenshot from a cell phone. It says 4G LTE at the top. There's a battery indicator. There's bars. And it's essentially the equivalent of FaceTime, that there's a picture of Mr. Dudko in it. The defense makes some claim that there was no identification of who that was in the picture. Mr. Dudko was sitting in the courtroom. The judge could see and compare. He knows what Mr. Dudko looks like. The judge can take all reasonable inferences. So when we look at it, that Mr. Dudko, it was a screenshot. He chose when to screenshot it. He chose to put it in his password protective file with other sexual images. And McCoy tells us context matters. So just looking at it by itself, it may look like a child in a bathtub. But when you look at it in context, it's sufficient to find on its own it's lascivious. Are there no other questions? The government respectfully asks this court to affirm Mr. Dudko's conviction and sentence. Thank you. Thank you, Mr. Davids. Mr. Goldberg. Thank you, Your Honor. My time is brief. I'm going to try to make three points quickly. If the stipulations are as conclusive as the government says they are, why have a trial? That's the first point. But the corollary of that is that here, the stipulation, if it was that conclusive, you need to advise the defendant of that. On page 11, I have some cases of my reply brief. The Livingston case, reversing or remanding when trial stipulation was tantamount to an unconditional plea of guilty when defendant was not informed that the stipulation would deprive defendant of his right to appeal conviction. And also the Larson case, it's the same type of holding. Here, the government has not addressed the stipulation, page 5, the last sentence. None of the visual depictions that support count 3 are included in the support of counts 1 and 2 of the indictment. It just reads the points that he liked. And then the final point is he talks about Mr. Dudko being in the photos. There is no evidence of that at trial. They could have called an expert to say that. They could have called an expert to say that Mr. Dudko took these photos from this phone. They didn't do any of those things. So we can't review that on appeal. I see my time's up. Thank you for your time. Thank you, Mr. Goldberg. Thank you also, Mr. Davids. Court appreciates counsel's participation and argument before the court this morning. We'll take the case under advisement.